No.\_\_\_\_\_
_____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT
_____

IN RE IVAN ABNER CANTU,

MOVANT.
_____

*Execution scheduled for February 28, 2024*
_____

## OPPOSED MOTION FOR STAY OF EXECUTION

TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

Today, Ivan Cantu filed in this Court an Opposed Motion for an Order Authorizing the District Court to Consider a Second or Successive Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Mr. Cantu respectfully asks this Court to stay his February 28, 2024, execution date.[1] Mr. Cantu's case comes to this

---

[1] Fifth Circuit Rule 8.1.2 requires Mr. Cantu to explain why this issue was not presented to the district court. Mr. Cantu did not raise the instant issue in the district court because he is required to obtain authorization to proceed on a second or successive petition from this Court. See 28 U.S.C. § 2244(b)(3)(A). In addition, because this is an original proceeding in this Court, none of the documents required under Fifth Circuit Rule 8.1 exist.

1

Court now because (1) the testimony of the State's star witnesses, Amy Boettcher and Jeff Boettcher, and Carlos Gonzalez was materially false in violation of the Due Process Clause of the Fourteenth Amendment; and, (2) the State suppressed evidence impeaching its star witness, Amy Boettcher, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and the Due Process Clause.

Substantial new evidence never considered by Mr. Cantu's jury or any reviewing court thoroughly impeaches the State's star witnesses, provides a credible non-inculpatory account of the physical evidence, and validates Mr. Cantu's account of event leading up to the murders indicating that the crime was related to the one of the victim's substantial drug business.

As the Texas Court of Criminal Appeals ("TCCA") found, the testimony of Mr. Cantu's then-girlfriend, Amy Boettcher – an admitted daily drug abuser who feared going to prison herself – was enough to "wholly incriminate[] [Mr. Cantu] in the murders and robbery" at issue. *Cantu v. State*, 2004 WL 3093156, at *4 (Tex. Crim. App. June 30, 2004). Ms. Boettcher's testimony was supported by her brother, Jeff Boettcher, who was a drug addict at the time and who testified to his willingness to do anything to protect his sister because they "were in it together." 34 RR 41; 60. As described in Mr. Cantu's motion for authorization, Mr. Boettcher has disavowed his trial testimony, insisting he testified to events that "never happened" and he "lied." Mr. Boettcher himself admits that he was not a credible witness due to his

history of drug abuse.

Additionally, Mr. Cantu has been consistent and unwavering in his account that a man known to him only as "Matt from the Valley" threatened him and Mr. Mosqueda prior to the murders, yet he had no ability to identify him until people who knew the relevant actors stepped forward. At Mr. Cantu's trial, State's witnesses mocked Mr. Cantu's account of being assaulted by a man who called himself "Matt" and drove a black Lincoln Town Car. They derided Mr. Cantu's statement as a desperate, fanciful attempt to deflect blame from himself onto some vague, imaginary bogie man. However, new evidence reveals that "Matt" was a real person: Mateo Gonzalez. Matt Gonzalez, who supplied large quantities of drugs transported from South Texas to Dallas, to *James Mosqueda*. Armed with this information, trial counsel could have shut down the State's use of Mr. Cantu's statements as evidence that he was lying to conceal his own complicity in the murders. The defense would have been able to impeach the State's witnesses and present a compelling defensive theory that Matt Gonzalez was, at minimum, a "person of interest" whom the Dallas Police Department failed to rule out as a suspect.

This Court has the authority to enter a stay of execution pending the outcome of this case. *See generally Barefoot v. Estelle*, 463 U.S. 880, 893–94 (1983) ("Accordingly, a circuit court, where necessary to prevent the case from becoming

moot by the petitioner's execution, should grant a stay of execution pending disposition of an appeal when a condemned prisoner obtains a certificate of probable cause on his initial habeas appeal."). If this Court authorizes this petition to proceed in the district court, a stay is necessary to prevent that litigation from being mooted by Mr. Cantu's execution.

A motion for stay of execution is analyzed according to the following four factors:

(1) whether the applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citations and quotations omitted); *see In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014) (applying *Nken* factors to a motion for stay of execution). Each factor weighs in favor of granting a stay of execution here.

First, for the reasons given in his authorization motion, Mr. Cantu has made a strong showing that he is likely to succeed on the merits of his claim. Mr. Cantu specifically incorporates all factual and legal arguments in that motion here. In short, Mr. Cantu's authorization motion makes a prima facie showing that he meets the

requirements to proceed in the district court on a successive petition. *See* 28 U.S.C. § 2244(b)(3)(C). Likewise, he is likely to succeed in the district court on the merits of his due process and *Brady* claims and on the requirements for authorization under § 2244(b)(2), as the State suppressed crucial exculpatory evidence despite Mr. Cantu's diligence in pursuing it.

Second, Mr. Cantu will be irreparably injured if this Court does not enter a stay because he will be executed without an opportunity to litigate his potentially meritorious claims. *See Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) ("'[I]n a capital case, the possibility of irreparable injury weighs heavily in the movant's favor,' especially when his claim has some merit—a possibility we cannot yet dismiss.") (quoting *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982)). Mr. Cantu has always maintained his innocence, and this new *Brady* material and evidence about Matt Gonzalez strongly supports his trial defense. Thus, his execution not only creates an injury, but also will prevent this potentially meritorious claim from being pursued.

Third, granting a stay would not substantially injure the State. This situation was created by the State's suppression of material, exculpatory evidence and false testimony from prosecution witnesses. State actors cannot now claim substantial harm for a situation created by their failure to comply with due process. Failing to enter a stay would, in fact, reward the State for violating due process.

Finally, the public interest lies in Mr. Cantu's favor in this instance. Although the public undoubtedly has an interest in seeing sentences carried out, that interest does not include carrying out executions of potentially innocent people in violation of the Constitution and Supreme Court precedent. To the contrary, the public interest lies in ensuring that the State complies with its due process obligations to refrain from securing convictions based on false testimony and to provide exculpatory information, particularly so in a death penalty case.

## PRAYER FOR RELIEF

For these reasons, Mr. Cantu requests that this Court enter an order staying his execution.

Respectfully submitted,

*/s/ Gena Bunn*

GENA BUNN
Texas Bar No. 00790323
Gena Bunn, PLLC
P.O. Box 6150
Longview, Texas
gbunn@genabunnlaw.com
(903) 804-4003

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2024, I electronically filed the foregoing Motion with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.

<i>/s/ Gena Bunn</i><br>
Gena Bunn

## CERTIFICATE OF COMPLIANCE

I certify that (1) this Motion was prepared in 14-point Times New Roman font using Microsoft Word software, (2) this Motion is 1193 words, excluding the exempted by the rules of court, and (3) this Motion has been scanned for viruses and the is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

<i>/s/ Gena Bunn</i><br>
Gena Bunn

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for the Director, who stated that the Director is opposed to this motion.

<i>/s/ Gena Bunn</i><br>
Gena Bunn