No. 24-40110

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN RE IVAN ABNER CANTU,

MOVANT.

## RESPONSE TO SHOW CAUSE ORDER
## AND SUPPORTING STATEMENT

**GENA BUNN**
**Texas Bar No. 00790323**
**Gena Bunn, PLLC**
**P.O. Box 6150**
**Longview, Texas 75608**
**gbunn@genabunnlaw.com**
**(903) 804-4003**

**ATTORNEY FOR PETITIONER**

*EXECUTION DATE: FEBRUARY 28, 2023*

Gena Blount Bunn, counsel for Ivan Abner Cantu, respectfully files this Response and Supporting Statement to the Court's Show Cause Order.

## SUMMARY

Counsel Gena Bunn assures this Court that she takes her professional and ethical duties to this Court, and to her clients, very seriously. She views the Court's Show Cause Order, the first she has ever received in her almost thirty years of practice, with great concern, only heightened by the fact that her client is scheduled to be executed in just shy of twenty-four hours. Counsel is aware of her professional obligations to the Court, and she complied with those obligations in good faith. Notably, counsel for the Respondent agrees that counsel complied with the Court's rules. *See* Respondent's Response to MFA at 7, 38. At the very least, she proceeded based on a good faith belief that she was complying with Rule 8.10.

## DISCUSSION

**I.  Show Cause Order**

On February 22, 2024, this Court ordered the undersigned counsel to show cause in writing "why the motion for authorization, motion for stay of execution and exhibits in support of the motion for authorization were filed on February 21, 2024. Also, explain why we should not impose disciplinary action against you for failing to comply with Fifth Circuit Rule 8.10."

1

## II. Fifth Circuit Rule 8.10

Rule 8.10 provides, in pertinent part, that a person sentenced to death who seeks "to challenge their convictions, sentences, or the execution procedures . . . must exercise reasonable diligence in . . . filing a notice of appeal from an adverse judgment of the district court . . . and a stay of execution with the clerk of this court at least 7 days before the scheduled execution." 5th Cir. Rule 8.10.

Counsel who "seek . . . an appeal from a district court judgment less than 7 days before the scheduled execution must attach to the proposed filing a detailed explanation stating under oath the reason for the delay." *Id*. However, if "the motions are filed less than 7 days before the scheduled execution, the court may direct counsel to show cause for the late filing." *Id*. "If counsel cannot do so, counsel will be subject to sanctions." *Id*.

## III. Counsel's Filings and Fifth Circuit Rule 8.10

Counsel's filings in this Court complied with Fifth Circuit Rule 8.10, a fact that the Respondent acknowledges. *See* Respondent's Response to MFA at 7, 38. At a minimum, counsel had a good faith and reasonable belief that they did. Counsel did not attach a statement explaining good cause for the date of filing because she believed it was not necessary. *See* Statement at 14. Calculating the timeline under Rule 8.10, in accordance with Federal Rule of Appellate Procedure 26 and Federal Rule of Civil Procedure 6, counsel's motion for order authorizing second or

2

successive petition ("MFA"), appendices, and motion for stay of execution ("stay motion") were not filed "less than 7 days" before the execution. *See* Statement at 14.

Mr. Cantu's execution is scheduled for tomorrow, February 28, 2024. The motion for authorization and other pleadings had to be filed "at least 7 days before" that date. 5th Cir. Rule 8.10. As this Court notes in its show cause order, Mr. Cantu's MFA and say motion were filed on February 21, 2024. February 21 was 7 days before February 28.

To calculate the time period under the applicable calculation rules, because the time period in Rule 8.10 is expressed in days, one must:

(A)  exclude the day of the event that triggers the period;

(B)  count every day, including intermediate Saturdays, Sundays, and legal holidays; and

(C)  include the last day of the period. . . .

Fed. R. App. P. 26(a)(1); Fed. R. Civ. P. 6(a)(1). Here, the event that triggered the time period was the date of the scheduled execution, February 28. Excluding February 28 and counting every day back for the filing date, February 21 was the seventh day before the execution date.

Counsel believed that she had met the deadline. Counsel recognizes that there has been some uncertainty, however, in interpreting the time period in Rule 8.10.

3

For example, one Fifth Circuit case states that, under Rule 8.10, the motions must be filed no later than "7 business days" prior to a scheduled execution date. *In re Rodriguez*, 891 F.3d 576, 577 (5th Cir. 2018); *but see* Fed. R. App. P. 26(a)(1) (count every day, including Saturday, Sunday, and holidays); *see also* Fed. R. Civ. P. 6(a)(1) (same). Another case states that Rule 8.10 requires petitions to present their claims "no later than 8 days before" a scheduled execution. *In re Sparks*, 939 F.3d 630, 631 n.1 (5th Cir. 2019). Yet, in *In re Jones*, this Court stated that the motions must be filed "at least seven days before" the scheduled execution. *In re Jones*. 998 F.3d 187, 188 n.6 (5th Cir. 2021). Counsel reasonably believed, based on the plain language of Rule 8.10 and the calculation rules, that she had complied with Rule 8.10's time requirement. Notably, counsel for the Respondent agrees with counsel's interpretation of the rule and believes that counsel's filings were timely. *See* Respondent's Response at 7, 38.

Counsel was not seeking to evade this Court's rules. Rather, she sought to comply with them while processing late-breaking factual developments in the case in the frantic last days before her client's scheduled execution. Counsel reasonably believed she had filed her MFA and stay motion in accordance with Rule 8.10. If the Court believes that she did not comply, counsel apologizes for her miscalculation.

4

## IV.  Reasons for February 21 Filing

As counsel set forth in Mr. Cantu's MFA, given the metered-dose disclosure of new evidence by the State in this case – from the outset of the investigation through trial and continuing into post-conviction review – counsel has struggled to marshal and present a holistic review of the myriad instances of false testimony and suppression of evidence that she believed plagued Mr. Cantu's conviction.  *See* Statement ¶¶ 5-13.

Counsel also alleged specifically that the claim regarding Carlos Gonzalez's false testimony emerged from public response to a podcast by a citizen-journalist podcaster named Matt Duff, and those allegations are supported by evidence submitted with the MFA.  *See* MFA at 51.  "Matt from the Valley" had been an ongoing mystery of the case, a shadow that bore continued investigation but had yet to yield any substance.  Then less than two weeks before Mr. Cantu's execution date, counsel was alerted to facts that she believed could form the basis of a claim of constitutional error.

Ryan Patton had connected Carlos Gonzalez to a friend from the Valley who drove a Lincoln after listening to the podcast with his wife in 2021. Exhibit 19 to MFA.  Mr. Patton was interviewed by the podcaster in 2021 and learned that his recollection of one of Carlos's friends who visited his shop in 2001 matched the drug

5

dealer who threatened Mr. Cantu. *Id*. But, at that time, nobody knew the actual identity of "Matt from the Valley."

It was not until very recently that the podcaster thought he had identified Mateo "Matt" Gonzalez—a drug dealer from Mission, Texas who drove a Lincoln Town Car—as Matt from the Valley. The undersigned counsel learned of this development for the first time on February 14, 2024. Mr. Patton viewed a picture of Mr. Gonzalez taken towards the end of his life (he died in 2022). Mr. Patton was not sure if he was the same man he saw with Carlos over 20 years ago. *Id*. On February 18, 2024, Mr. Patton viewed a sketch of Matt Gonzalez with longer hair and declared that he was 95% certain that Matt Gonzalez was the man he saw with Carlos Gonzalez in September of 2001. Mr. Patton signed a declaration the next day, on February 19, 2024.

Additionally, Mr. Cantu's investigator, Stewart Fillmore, acting on the podcaster's information that Matt Gonzalez was "Matt from the Valley," spoke with Matt Gonzalez's ex-wife, June Rose, on February 19, 2024. Exhibit 18 to MFA. She confirmed that she had known Matt Gonzalez since the late 1980s or early 1990s and was in a common law marriage with him from approximately 1996 to until he went to prison for selling drugs in 2006 or 2007. *Id*. She also confirmed that Matt Gonzalez knew and supplied drugs to James Mosqueda, but she denied knowing the details. *Id*.

6

Jason Harrelson worked for Mr. Mosqueda in the 1990s. Exhibit 15 to MFA. After seeing a picture of Matt Gonzalez on February 14, 2024, he identified him as one of Mr. Mosqueda's acquaintances who would occasionally show up where they worked. *Id*. Mr. Harrelson signed his declaration on February 17, 2024.

Prior to this month, counsel did not know the identity of Matt from the Valley. As soon as this information was discovered through the podcaster's crowd-sourced investigation and passed on to undersigned counsel, counsel acted as quickly as she could. She filed Mr. Cantu's second successive state application in less than a week's time, on February 20, 2024, and his MFA and motion for stay of execution in this Court the following day February 21.

**V. Other Factors to be Considered**

Should this Court decide that Mr. Cantu's counsel did not comply with Rule 8.10, it should not impose sanctions.

Counsel's client is scheduled to be executed tomorrow. Counsel had reasonable and legitimate grounds for seeking relief in this Court when she did, and she had a professional duty to her client to do so. This is precisely the situation in which courts should permit an advocate for a condemned man to pursue an arguably meritorious ground for relief for her client, even if no case squarely compels his entitlement to relief and even if the request for relief is not likely to be successful.

7

Counsel had a duty to represent her client at this stage of proceedings. *See Battaglia v. Stephens*, 824 F.3d 470, 474 (5th Cir. 2016) ("Under §3599(e), counsel "shall represent the defendant throughout every subsequent stage of available judicial proceedings, . . . and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant."). She also had an ethical obligation to pursue any arguably meritorious ground for relief. See American Bar Ass'n, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. ed. Feb. 2003), Guideline 10.15.1, https://www.capstandards.org/2003-aba-guidelines/ ("Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation, including challenges to any overly restrictive procedural rules.").

Further, counsel was acting with late-breaking factual developments under short time constraints necessitated by an impending execution date.

Finally, sanctions would negatively impact the reputation of counsel, a solo practitioner with a reputation for quality, zealous, and ethical representation of her clients in criminal appeals. Counsel takes her duties to the courts and her clients seriously. Counsel spent the first fourteen years of her legal career defending the validity of state court capital convictions and death sentences when they were

8

challenged in federal court appeals, like this one. In 2008, she moved from Austin to Longview and began representing criminal defendants. While she is not a frequent capital habeas litigator – in fact, Mr. Cantu is her only death-sentenced client – she strives to represent him to the best of her ability.

## CONCLUSION

Respectfully, sanctions should not be imposed on counsel Gena Bunn. She did not violate Fifth Circuit Rule 8.10 or other professional duties to this Court in filing the MFA and stay motion.

Respectfully submitted,

_/s/ Gena Bunn_____
GENA BUNN
Texas Bar No. 00790323

Gena Bunn, PLLC
P.O. Box 6150
Longview, Texas 75608
gbunn@genabunnlaw.com
(903) 804-4003

COUNSEL FOR MOVANT/PETIONER

## CERTIFICATE OF COMPLIANCE

I certify that (1) this document was prepared in 14-point Times New Roman font using Microsoft Word software, (2) this document is 1,940 words, excluding the parts of the document exempted by the rules of court, and (3) this Motion has been scanned for viruses and the Motion is virus-free. Counsel further certifies that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13.

*/s/ Gena Bunn*
Gena Bunn

## CERTIFICATE OF SERVICE

I certify that on February 27, 2024, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification of such filing to Travis Bragg, Assistant Attorney General, Counsel for Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division, via electronic mail. I have also sent a copy via email to counsel for the Director, Travis Bragg.

*/s/ Gena Bunn*
Gena Bunn